## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TERRY and KRISTA BRYANT,**<br>**individually and as parents of T.B. and L.B.,**<br>**minor children,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17 – CV – 432-KEW** |
| | ) | |
| **INDEPENDENT SCHOOL**<br>**DISTRICT NO. 8 of Muskogee County,**<br>**a/k/a Oktaha Public Schools,** | ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **JAMES MURR, in his official capacity as**<br>**President of the Oktaha Board of Education,** | ) ) | |
| | ) | |
| **BELIENDA HALL-GARRETT, in her official**<br>**capacity as Vice President of the Oktaha Board**<br>**of Education,** | ) ) ) | |
| | ) | |
| **RICHARD MERRITT, in his official capacity as**<br>**Clerk of the Oktaha Board of Education,** | ) ) | |
| | ) | |
| **KATY SMITH, in her official capacity as a**<br>**member of the Oktaha Board of Education,** | ) ) | |
| | ) | |
| **ALLEN YORK, in his official capacity as a**<br>**member of the Oktaha Board of Education, and** | ) ) | |
| | ) | |
| **SUPERINTENDENT JERRY NEEDHAM,**<br>**individually and in his official capacity,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COME NOW** Plaintiffs Terry and Krista Bryant, individually and as parents of T.B. and

L.B., minor children (collectively "Plaintiffs"), by and through their attorneys of record, Bradley

J. Brown, and Patrick G. Colvin, of the law firm of Jones, Gotcher & Bogan, P.C., and for their

causes of action against Defendant Independent School District No. 8 of Muskogee County, a/k/a

Oktaha Public Schools, Defendant James Murr, in his official capacity as President of the Oktaha

Board of Education, Defendant Belienda Hall-Garrett, in her official capacity as Vice President of the Oktaha Board of Education, Defendant Richard Merritt, in his official capacity as Clerk of the Oktaha Board of Education, Defendant Katy Smith, in her official capacity as a member of the Oktaha Board of Education, Defendant Allen York, in his official capacity as a member of the Oktaha Board of Education, and Defendant Superintendent Jerry Needham, individually and in his official capacity (collectively "Defendants"), pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments of the Constitution of the United States, state as follows:

## JURISDICTION AND VENUE

1. Terry and Krista Bryant are citizens of the State of Oklahoma and they reside in McIntosh County, Oklahoma. They are married and together they have three children (L.B., T.B., and Bailey Bryant).

2. Independent School District No. 8 of Muskogee County, a/k/a Oktaha Public Schools ("Oktaha") is located at 531 East Prairie Street, Town of Oktaha, Muskogee County, State of Oklahoma. It provides free public education for the children residing within the boundaries of its district, as well as a large number of transfer students from surrounding districts. Although the total population for the Oktaha school district is approximately 380 people, 765 students were enrolled in Oktaha for the fall semester of the 2016 – 2017 school year.

3. James Murr ("Mr. Murr"), is President of the Oktaha Board of Education ("Board"), and he has been a member of the Board during all relevant times concerning the subject matter of this lawsuit. Mr. Murr is a citizen of the State of Oklahoma, and on information and belief, he resides in Muskogee County, Oklahoma.

2

4. Belienda Hall-Garrett ("Ms. Hall-Garrett"), is Vice President of the Board, and she has been a member of the Board during all relevant times concerning the subject matter of this lawsuit. Ms. Hall-Garrett is a citizen of the State of Oklahoma, and on information and belief, she resides in Muskogee County, Oklahoma.

5. Richard Merritt ("Mr. Merritt"), is Clerk of the Board, and he has been a member of the Board during all relevant times concerning the subject matter of this lawsuit. Mr. Merritt is a citizen of the State of Oklahoma, and on information and belief, he resides in Muskogee County, Oklahoma.

6. Katy Smith ("Ms. Smith"), is a member of the Board, and she has been a member of the Board during all relevant times concerning the subject matter of this lawsuit. Ms. Smith is a citizen of the State of Oklahoma, and on information and belief, he resides in Muskogee County, Oklahoma.

7. Allen York ("Mr. York"), is a member of the Board, and he has been a member of the Board during all relevant times concerning the subject matter of this lawsuit. Mr. York is a citizen of the State of Oklahoma, and on information and belief, he resides in Muskogee County, Oklahoma

8. Superintendent Jerry Needham ("Superintendent Needham") is the Superintendent of Oktaha. He is a citizen of the State of Oklahoma, and on information and belief, he resides in McIntosh County, Oklahoma. He has been employed as Oktaha's Superintendent for over 30 years.

9. The causes of action asserted herein arose from the treatment of Plaintiffs while T.B. and L.B. attended Oktaha.

3

10. This Court has jurisdiction over Plaintiffs' complaint pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States, and this Court has supplemental jurisdiction over Plaintiffs' state law causes of action asserted in the complaint pursuant to 28 U.S.C. § 1367.

11. Venue is appropriate in this Court because the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, in accordance with 28 U.S.C. § 1391.

## BACKGROUND FACTS

12. Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through six (6) above.

13. Terry and Krista Bryant have three children. L.B,. is 9 years old and is currently in the 4th grade. T.B., is 14 years old and is currently in 9th grade. Additionally, their daughter, Bailey Bryant, graduated from Oktaha, and she is currently enrolled at the University of Oklahoma.

14. Terry and Krista Bryant desired to send their children to Oktaha because they believed Oktaha would provide their children with a good education and prepare them for future success.

15. Pursuant to Oklahoma's Education Open Transfer Act, enumerated in OKLA. STAT. tit 70, § 8-101.2 *et seq*., Terry and Krista Bryant applied for open transfers to Oktaha for their three children, and each application was granted by Oktaha.

16. L.B. began attending Oktaha during the 2011–2012 school year. Bailey and T.B. enrolled at Oktaha during the 2012–2013 school year. Bailey graduated from Oktaha in May of 2014 (she graduated top 10 in her class).

17. Like his older sister, T.B. was very successful while attending Oktaha. He was a member of academic teams and the honor band. Additionally, he represented Oktaha in the State Spelling Bee three separate times.

18. Oklahoma's School Safety and Bullying Prevention Act, enumerated in OKLA. STAT. tit. 70, § 24-100.2 *et seq*. ("Anti-Bullying Act"), requires school districts to implement anti-bullying policies. Pursuant to the statutory requirement, Oktaha adopted its current Policy Prohibiting Student Harassment, Intimidation, Bullying, and Threatening Behavior ("Policy") on October 8, 2012.

19. The Policy makes clear that parents have a responsibility to "[i]nform the school immediately if they think their child is being bullied."

20. The Policy does not explain how incidents of bullying are to be reported to the school aside from encouraging reports to be made to "school personnel."

21. According to Oklahoma's Anti-Bullying Act, the term "bullying" is defined as:

any pattern of harassment, intimidation, threatening behavior, physical acts, verbal or electronic communication directed toward a student . . . reasonably perceived as being done with the intent to cause negative educational or physical results for the targeted individual . . . and is communicated in such a way as to disrupt or interfere with the school's educational mission or the education of any student.

Okla. Stat. tit. 70, § 24-100.3(A)(1).

22. T.B. was repeatedly bullied while attending Oktaha. For example, T.B. was verbally and physically harassed on numerous occasions. T.B. was physically assaulted; called crude and inappropriate names; personal property was stolen and broken; mocked for physical appearance; was threatened; and was told to "kill himself." All of these bullying incidents were at the hands of the same student, N.W.

23. T.B. reported the incidents of bullying to the high school principal, Chris Burt ("Mr. Burt"), in accordance with the Policy, but the bullying did not cease.

24. Terry and Krista Bryant, acting in reliance on Oktaha's Policy, brought the escalating incidents of bullying to the attention of Superintendent Needham because Mr. Burt was unsuccessful in stopping the bullying.

25. Superintendent Needham assured Terry Bryant that the issue would be resolved but stated that he was getting tired of stepping in and taking care of something the principal could handle.

26. Despite Superintendent Needham's assurances, the bullying continued into the 2016 – 2017 school year.

27. Sometime in December 2016, Terry and Krista Bryant tried to contact Superintendent Needham again in an attempt to finally put a stop to the bullying of their son; however, Superintendent Needham was on leave and he could not take care of school business until he returned in January. Terry Bryant and Ray Henson, the acting superintendent, agreed that the best thing to do was to leave a voicemail for Superintendent Needham since he had previously dealt with the bullying issue.

28. Despite Terry Bryant's message, Superintendent Needham never contacted Terry and Krista Bryant about the bullying issues.

29. The bullying of T.B. continued throughout the spring semester.

30. On or about Thursday, March 30, 2017, T.B. told Terry and Krista Bryant about a comment that Dana Pittman ("Ms. Pittman"), T.B.'s English teacher, made to him in class that day. Specifically, Ms. Pittman told T.B. in front of the class that she "ought to knock him upside the head." The comment made T.B. feel embarrassed and uncomfortable.

6

31. Terry and Krista Bryant attempted to contact Ms. Pittman to gather information and context from her about T.B.'s concern.

32. Ms. Pittman left school before Terry and Krista Bryant had a chance to speak with her, but another school employee said that she would have Ms. Pittman follow up with them by Monday.

33. Late in the morning on Monday, April 3, 2017, Terry and Krista Bryant had not received a phone call from Ms. Pittman, so they called the school in order to follow up with Ms. Pittman.

34. Terry and Krista Bryant were directed to speak with Kari B. Fulton ("Ms. Fulton"), the school counselor, about the issue. Ms. Fulton is Superintendent Needham's daughter. After explaining the incident to Ms. Fulton, Terry and Krista Bryant were promised that they would receive a call back from either Ms. Pittman or Mr. Burt.

35. Instead, Terry and Krista Bryant received a phone call from Superintendent Needham, who requested a meeting at 4:00 p.m. in his office.

36. Once Terry and Krista Bryant arrived for the meeting, Superintendent Needham immediately began questioning them about the previous bullying incidents involving T.B., and Superintendent Needham did not mention Ms. Pittman's behavior at all.

37. During the meeting, Superintendent Needham got up, appeared to flip a switch, and stated that the conversation was being recorded. Furthermore, he said there was only one solution to the problem, T.B. and L.B. did not have to continue attending school at Oktaha.

38. Terry and Krista Bryant reminded Superintendent Needham that he had called the meeting and that they had no intention of discussing the previous bullying incidents. Terry and Krista Bryant simply wanted to discuss the matter with Ms. Pittman to understand the context of

what was said to their son that caused him to feel uncomfortable and embarrassed in the classroom.

39. In response, Superintendent Needham commented on Terry Bryant's physical abnormalities and shaky hands (Terry Bryant was the victim of a chemical burn several years ago that affected his nervous system and caused his hands to shake periodically). Terry Bryant told Superintendent Needham to not make comments about his physical condition.

40. Superintendent Needham was angered by Terry Bryant's comment. In response, he opened his office door and instructed Terry and Krista Bryant to leave his office immediately. Terry and Krista Bryant were shocked and remained sitting.

41. This caused Superintendent Needham to repeat his demand, and he shouted at his assistant to "CALL 911."

42. Terry and Krista Bryant were unsure if the threatened 911 call was a joke, so they asked Superintendent Needham if he was serious. Superintendent Needham once again shouted at his assistant to, "CALL 911 NOW."

43. Thereafter, Terry and Krista Bryant complied with Superintendent Needham's request, hoping to avoid further disruptions, and Superintendent Needham followed Terry and Krista Bryant out of the school building. Terry and Krista Bryant were extremely humiliated and upset by Superintendent Needham's actions, which occurred in the presence of other parents and school personnel.

44. Terry and Krista Bryant did not raise their voices or make any threats towards Superintendent Needham during the short meeting.

45. After the meeting, Terry and Krista Bryant requested to be placed on the next Oktaha School Board meeting agenda in order to discuss Superintendent Needham's unprofessional behavior.

46. Terry and Krista Bryant contacted school board member, Ms. Hall-Garrett, in order to discuss the situation. They asked Ms. Hall-Garrett if they could bring their children to school the next day.

47. Ms. Hall-Garrett had Superintendent Needham call Terry and Krista Bryant, and he informed them that T.B. and L.B. were allowed back to school the following day.

48. Terry and Krista Bryant's request to discuss Superintendent Needham's unprofessional behavior was included as agenda item number 4 for the Oktaha School Board meeting on April 10, 2017, at 6:30 P.M.

49. Agenda item number 5 called for a discussion regarding the status of T.B.'s and L.B.'s open transfers. Agenda item number 5 was placed on the agenda at the request of Superintendent Needham.

50. During the meeting, Terry and Krista Bryant addressed the Oktaha School Board and voiced their concerns about Superintendent Needham's behavior on April 3, 2017.

51. At the conclusion of the meeting, Superintendent Needham provided Terry and Krista Bryant with a letter notifying them that he had revoked T.B.'s and L.B.'s open transfers, effective immediately. This was done without any advance notice whatsoever.

52. Additionally, Superintendent Needham informed the Oktaha School Board that they had no say in the matter, and that he had the power to act without their approval in accordance with Oktaha's Open Transfer Policy.

53. T.B. and L.B. missed a full day of school on April 11, 2017. This occurred during the week of state and semester testing. T.B. missed a science test and he was not allowed to make it up. T.B. received a zero on the test, which lowered his final grade in the class to a D.

54. Terry and Krista Bryant sought the assistance of legal counsel and their attorney contacted Superintendent Needham to gather information about the unilateral revocation of T.B.'s and L.B.'s open transfers. Superintendent Needham stated that T.B. and L.B. were welcome back to school and that he did not "feel good about what we did last night."

55. T.B. and L.B. returned to school on April 12, 2017, to find their desks and lockers cleaned out. All of their personal belongings were gone. Multiple students and teachers were told by school personnel that T.B. and L.B. had gone to another school.

56. Terry and Krista Bryant had no further communication with Superintendent Needham after T.B. and L.B. returned to school.

57. On or about June 23, 2017, Terry and Krista Bryant received a letter in the mail informing them that T.B.'s and L.B.'s open transfers had been revoked once again. No explanation was provided for the action.

58. In response, Terry and Krista Bryant requested another meeting with the Oktaha School Board in an attempt to petition the Board to reconsider the decision.

59. The Oktaha School Board agreed to hold a Special Meeting on July 27, 2017. Terry and Krista Bryant attended the meeting along with T.B.

60. During the meeting, and while T.B. was present in the room, Oktaha School Board member, Mr. Merritt, maliciously stated that some kids needed to "grow a pair." After this inappropriate, unprofessional, and offensive comment, the Oktaha School Board refused to reconsider the decision revoking the open transfers of T.B. and L.B.

61. T.B. and L.B. are denied the ability to enroll at Oktaha for the 2017 – 2018 school year.

62. The actions and inactions of Oktaha and Superintendent Needham were contrary to the Policy and contrary to the spirit of Oklahoma's Anti-Bullying Act.

63. The actions and inactions of Oktaha and Superintendent Needham demonstrated a deliberate indifference to the issue of school bullying.

64. On August 23, 2017, Plaintiffs served Defendants with Notice of a Governmental Tort Claim ("Notice").

65. Following service of the Notice, Superintendent Needham harassed and retaliated against Terry and Krista Bryant.

66. On the morning of Saturday, September 2, 2017, Terry and Krista Bryant were eating breakfast at Irene's Kountry Kookin', a local restaurant located at 716 West Gentry Avenue, Checotah, Oklahoma, and while eating at the restaurant they observed Superintendent Needham walk into the restaurant with two young girls.

67. Terry and Krista Bryant finished their breakfast and left the restaurant without any interaction with Superintendent Needham.

68. As Terry and Krista Bryant walked toward their vehicle in the restaurant's parking lot, they observed Superintendent Needham's dually pickup truck parked extremely close to the driver's side door of their vehicle, and it was impossible for them to enter their vehicle through their driver's side door.

69. As Terry and Krista Bryant drove out of the restaurant's parking lot they observed Superintendent Needham walk outside the restaurant and gesture at them with his middle finger fully extended.

70. Superintendent Needham's actions were intentional, oppressive, malicious, and retaliatory in response to Plaintiffs' Notice.

**FIRST CAUSE OF ACTION:**
**DENIAL OF PROCEDURAL DUE PROCESS – FIRST REVOCATION**

(Brought pursuant to 42 U.S.C. § 1983 against all Defendants)

71. Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through sixty five (65) above.

72. Superintendent Needham's unilateral revocation of T.B.'s and L.B.'s open transfers on or about April 10, 2017, constituted a deprivation of Plaintiffs' constitutionally protected property and/or liberty interests without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States.

73. T.B. and L.B., pursuant to OKLA. STAT. tit. 70, § 8-101.2 and Oktaha's Open Transfer Policy, have a property interest in continuing their education at Oktaha, that vested once their open transfer requests were approved by Oktaha.

74. T.B.'s and L.B.'s open transfers were revoked and they were removed from school without receiving notice or a meaningful opportunity to be heard.

75. This was a violation of T.B. and L.B.'s clearly established right to procedural due process guaranteed to them by the Fourteenth Amendment of the Constitution of the United States.

76. Superintendent Needham was acting under color of state law when he unilaterally revoked T.B.'s and L.B.'s open transfers.

77. Superintendent Needham's unilateral revocation was motivated by Oktaha's Open Transfer Policy allowing him to unilaterally revoke open transfers without complying with the requirements of procedural due process.

12

78. Superintendent Needham acted maliciously, or in the alternative recklessly, in disregarding T.B.'s and L.B.'s constitutional rights and retaliating against Plaintiffs by unilaterally revoking the open transfers. Such conduct should be punished with the imposition of punitive damages.

79. As an actual and proximate result of Defendants' conduct, Plaintiffs have been injured and suffered damages in an amount to be determined according to proof.

80. Plaintiffs request judgment in their favor and against the Defendants as set forth in the Prayer for Relief.

## SECOND CAUSE OF ACTION:
## DENIAL OF PROCEDURAL DUE PROCESS – SECOND REVOCATION

(Brought pursuant to 42 U.S.C. § 1983 against all Defendants)

81. Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through seventy five (75) above.

82. The revocation of T.B.'s and L.B.'s open transfers on or about June 12, 2017, constituted a deprivation of their constitutionally protected property and/or liberty interests without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States.

83. T.B. and L.B., pursuant to OKLA. STAT. tit. 70, § 8-101.2 and Oktaha's Open Transfer Policy, have a property interest in continuing their education at Oktaha, that vested once their open transfer requests were approved by Oktaha.

84. T.B.'s and L.B.'s open transfers were revoked and they were not permitted to enroll at Oktaha for the 2017–18 school year.

85. The revocation occurred without notice or a meaningful opportunity to be heard.

86. This was a violation of T.B.'s and L.B.'s clearly established right to procedural due process guaranteed to them by the Fourteenth Amendment of the Constitution of the United States.

87. Defendants were acting under color of law when they revoked T.B.'s and L.B.'s open transfers.

88. Defendants revocation of the transfers was motivated by Oktaha's Open Transfer Policy permitting Defendants to revoke open transfers without complying with the requirements of procedural due process.

89. Superintendent Needham acted maliciously, or in the alternative recklessly, in disregarding T.B.'s and L.B.'s constitutional rights and retaliating against Plaintiffs. Such conduct should be punished with the imposition of punitive damages.

90. As an actual and proximate result of the Defendants' conduct, Plaintiffs have been injured and suffered damages in an amount to be determined according to proof.

91. Plaintiffs request judgment in their favor and against the Defendants as set forth in the Prayer for Relief.

## THIRD CAUSE OF ACTION:
## DENIAL OF SUBSTANTIVE DUE PROCESS – FIRST REVOCATION

(Brought pursuant to 42 U.S.C. § 1983 against all Defendants)

92. Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through eighty six (86) above.

93. Superintendent Needham's unilateral revocation of T.B.'s and L.B.'s open transfers on or about April 10, 2017, constituted a deprivation of their constitutionally protected property and/or liberty interests without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States.

94. T.B. and L.B., pursuant to OKLA. STAT. tit. 70, § 8-101.2 and Oktaha's Open Transfer Policy, have a property interest in continuing their education at Oktaha, that vested once their open transfer requests were approved by Oktaha.

95. Superintendent Needham's unilateral revocation of T.B.'s and L.B.'s open transfers was an irrational and arbitrary decision that violated T.B.'s and L.B.'s clearly established right to substantive due process guaranteed to them by the Fourteenth Amendment of the Constitution of the United States.

96. Superintendent Needham was acting under color of law when he unilaterally revoked T.B.'s and L.B.'s open transfers.

97. Superintendent Needham's unilateral revocation was motivated by Oktaha's Open Transfer Policy permitting him to unilaterally revoke open transfers for irrational and arbitrary reasons.

98. Superintendent Needham's unilateral revocation of T.B. and L.B.'s open transfers during the semester was a malicious attempt to retaliate against Terry and Krista Bryant's request to discuss his inappropriate behavior in front of the Oktaha School Board. In the alternative, Superintendent Needham's unilateral revocation displayed a reckless disregard for T.B.'s and L.B.'s constitutional rights. Such conduct should be punished with the imposition of punitive damages.

99. As an actual and proximate result of Defendants' conduct, Plaintiffs have been injured and suffered damages in an amount to be determined according to proof.

100. Plaintiffs request judgment in their favor and against the Defendants as set forth in the Prayer for Relief.

**FOURTH CAUSE OF ACTION:**
**DENIAL OF SUBSTANTIVE DUE PROCESS – SECOND REVOCATION**

(Brought pursuant to 42 U.S.C. § 1983 against all Defendants)

101. Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through ninety five (95) above.

102. The revocation of T.B.'s and L.B.'s open transfers on or about June 12, 2017, constituted a deprivation of their constitutionally protected property and/or liberty interests without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States.

103. T.B. and L.B., pursuant to OKLA. STAT. tit. 70, § 8-101.2 and Oktaha's Open Transfer Policy, have a property interest in continuing their education at Oktaha, that vested once their open transfer requests were approved by Oktaha.

104. Defendants' revocation of T.B.'s and L.B.'s open transfers was an irrational and arbitrary action that violated T.B.'s and L.B.'s clearly established right to substantive due process guaranteed to them by the Fourteenth Amendment of the Constitution of the United States.

105. Defendants acted under color of law when they revoked T.B.'s and L.B.'s open transfers.

106. Defendants' revocation of T.B.'s and L.B.'s open transfers was motivated by Oktaha's Open Transfer Policy permitting them to revoke open transfers for irrational and arbitrary reasons.

107. Superintendent Needham acted maliciously, or in the alternative recklessly, in disregarding T.B.'s and L.B.'s constitutional rights and retaliating against Plaintiffs. Such conduct should be punished with the imposition of punitive damages.

108. As an actual and proximate result of Defendants' conduct, Plaintiffs have been injured and suffered damages in an amount to be determined according to proof.

109. Plaintiffs request judgment in their favor and against the Defendants as set forth in the Prayer for Relief.

## FIFTH CAUSE OF ACTION:
## DENIAL OF EQUAL PROTECTION

(Brought pursuant to 42 U.S.C. § 1983 against all Defendants)

110. Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through one hundred and four (104) above.

111. Plaintiffs have been intentionally treated differently than other similarly situated individuals by Defendants in violation of the Fourteenth Amendment of the Constitution of the United States.

112. Plaintiffs are similarly situated to other individuals that have reported incidents of bullying; however, Plaintiffs have been ignored, mistreated, and retaliated against by Defendants.

113. Furthermore, Defendants have a practice of handling disciplinary and academic issues involving student athletes different than non-athlete students.

114. There is no rational basis for this differential treatment because Defendants' treatment of Plaintiffs was irrational and arbitrary.

115. Defendants acted under color of law when they irrationally and arbitrarily treated Plaintiffs differently than other similarly situated individuals.

116. Defendants arbitrary and irrational actions were motivated by Oktaha's policies and customs.

117. Superintendent Needham acted maliciously, or in the alternative recklessly, in disregarding T.B.'s and L.B.'s constitutional rights and retaliating against Plaintiffs. Such conduct should be punished with the imposition of punitive damages.

118. As an actual and proximate result of Defendants' conduct, Plaintiffs have been injured and suffered damages in an amount to be determined according to proof.

119. Plaintiffs request judgment in their favor and against the Defendants as set forth in the Prayer for Relief.

## SIXTH CAUSE OF ACTION:
## <u>FREE SPEECH RETALIATION CLAIM</u>

(Brought pursuant to 42 U.S.C. § 1983 against all Defendants)

120. Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through one hundred fourteen (114) above.

121. Plaintiffs' were subjected to retaliatory actions for speaking out against bullying and voicing concerns about Superintendent Needham's unprofessional behavior.

122. Speaking out against bullying and bringing complaints of unprofessional behavior at a public school is an activity that is protected by the First Amendment of the Constitution of the United States.

123. Defendants' continued ignorance, deliberate indifference, and blatant animosity toward Plaintiffs caused Plaintiffs to stop reporting bullying and forced Terry and Krista Bryant to instruct their son to protect himself.

124. Defendants' actions would have chilled a person of ordinary firmness from continuing to engage in voicing their complaints.

125. Defendants' actions toward Plaintiffs were substantially motivated by Plaintiffs exercise of their First Amendment rights.

126. Defendants acted under color of law when they retaliated against Plaintiffs.

127. Defendants actions were motivated by Oktaha's policies and customs.

128. Additionally, Superintendent Needham maliciously retaliated against Plaintiffs for bringing complaints about his behavior in front of the Oktaha School Board. Alternatively, Superintendent Needham recklessly disregarded Plaintiffs' constitutional rights. Such conduct should be punished with the imposition of punitive damages.

129. As an actual and proximate result of Defendants' conduct, Plaintiffs have been injured and suffered damages in an amount to be determined according to proof.

130. Plaintiffs request judgment in their favor and against the Defendants as set forth in the Prayer for Relief.

### SEVENTH CAUSE OF ACTION:
### NEGLIGENCE

(Brought pursuant to Oklahoma Common Law against all Defendants)

131.  Plaintiffs hereby incorporate and re-allege the allegations contained in paragraph numbers one (1) through one hundred twenty four (124) above.

132. Defendants have failed to approve Plaintiff's claim as outlined in Plaintiffs' Notice of Governmental Tort Claim, which was served upon the Defendants on August 23, 2017.

133.  Superintendent Needham owed the Plaintiffs a duty to enforce and adhere to Oktaha Public School's Policy Prohibiting Student Harassment, Intimidation, Bullying, and Threatening Behavior, and Oklahoma's School Safety and Bullying Prevention Act, enumerated in OKLA. STAT. tit. 70, § 24-100.2 *et seq*.

134.  This duty also includes not retaliating or punishing persons complying with school policies.

135.    A reasonable prudent superintendent of an Oklahoma public school under the same or similar circumstances would not have revoked the transfers of T.B. and L.B. because of reports of T.B. being bullied at school.

136.    Furthermore, no reasonable prudent public school superintendent in Oklahoma would consider reports of a child being bullied as "interfere[nce] with the peaceful conduct of school" that would give rise for grounds to revoke open transfers especially when a policy encourages reports of bullying to be made by parents and students to "school personnel."

137.    Superintendent Needham breached his duties to the Plaintiffs each time he revoked T.B.'s and L.B.'s transfers.

138.    Superintendent Needham was acting within the scope of his employment as an employee of Oktaha when he breached his duties to the Plaintiffs.

139.    As a result of Superintendent Needham's breaches of his duties the Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

140.    Superintendent Needham's actions against the Plaintiffs were oppressive, or at a minimum his actions recklessly disregarded Plaintiffs' rights, and such conduct should be punished with the imposition of punitive damages by a jury.

## JURY DEMAND

141.    Plaintiffs request a trial by jury for all of their claims.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Terry and Krista Bryant, individually and as parents of T.B. and L.B., minor children, pray this Court enter judgment in their favor and against the Defendants as follows:

1. An order granting Plaintiffs nominal and compensatory damages against Defendants for violations of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States (procedural).

2. An order granting Plaintiffs nominal, compensatory, and punitive damages against Superintendent Needham, in his individual capacity, for violations of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States (substantive).

3. An order granting Plaintiffs nominal and compensatory damages against Defendants for violations of the First Amendment of the Constitution of the United States.

4. An order granting Plaintiffs nominal, compensatory, and punitive damages against Superintendent Needham, in his individual capacity, for violations of the First Amendment of the Constitution of the United States.

5. An order granting Plaintiffs nominal and compensatory damages against Defendants for violations of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

6. An injunction prohibiting Defendants from revoking open transfers due to reports of bullying.

7. An order granting Plaintiffs nominal, compensatory, and punitive damages against the Defendants for negligence.

8. Interest, where appropriate, on any damages awarded to Plaintiffs.

9. Attorneys' fees, expenses, and costs incurred in the prosecution of this action pursuant to, *inter alia*, 42 U.S.C. § 1988(b) and other applicable laws.

10. Any other and further relief as the Court may deem just and proper.

Dated:    November 22, 2017

Respectfully submitted,

**JONES, GOTCHER & BOGAN, P.C.**

By: s/ Bradley J. Brown
    Bradley J. Brown, OBA # 31003
    Patrick G. Colvin, OBA # 31519
    15 East 5th Street, Suite 3800
    Tulsa, Oklahoma  74103
    Telephone:  (918) 581-8200
    Facsimile:  (918) 583-1189
    Email:  bbrown@jonesgotcher.com
          pcolvin@jonesgotcher.com
    **ATTORNEYS FOR PLAINTIFFS**